## Hayes v. Commonwealth.

(Decided October 9, 1925.)

### Appeal from Floyd Circuit Court.

1. Criminal Law—Grounds for New Trial, Not Discussed in Brief, Treated as Waived.—Grounds for new trial, not discussed in appellant's brief, will be treated as waived.

2. Infants—Juvenile Court Order that Juvenile Offender be Proceeded Against Under Criminal Law Cannot be Attacked Collaterally in such Proceedings.—Under Ky. Stats., section 331e-5, juvenile court order, holding juvenile offender in custody, referring case to grand jury and recommending that he be proceeded against under criminal laws, cannot be attacked collaterally in such proceedings, where court had jurisdiction of juvenile, and latter's parents and jailer who had custody of him were before court.

3. Homicide—Failure to Instruct Jury to Convict of Involuntary Manslaughter, if Doubtful as Between that and Voluntary Manslaugher, Held Reversible Error.—Failure to instruct, as required by Criminal Code of Practice, section 239, that, if jury entertained doubt as to whether defendant was guilty of voluntary or involuntary manslaughter, they should find him guilty of latter, held reversible error.

4. Homicide—Instructions as to Murder and Manslaughter Held Improperly Combined.—In murder trial, instructions as to murder and manslaughter held improperly combined.

5. Homicide—Self-Defense Instruction Held Not Warranted by Evidence.—Evidence in murder trial held insufficient to warrant self-defense instruction.

6. Criminal Law—Omission of Instruction on Voluntary Manslaughter Held Not Cured by Reasonable Doubt Instruction.—Error in omission of instruction, required by Criminal Code of Practice,

section 239, to convict of involuntary manslaughter, if doubtful as
to whether defendant was guilty of that or voluntary manslaugh-
ter, held not cured by reasonable doubt instruction, required by
section 238.

B. M. JAMES, JOHN CAUDILL, A. J. KIRK and O. C. HALL for
appellant.

-FRANK E. DAUGHERTY, Attorney General, and CHARLES F.
CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Charged by indictment with the murder of Tom Din-
gus, the appellant was found guilty of voluntary man-
slaughter, and his punishment fixed at imprisonment in
the penitentiary for ten years. This homicide occurred
about eleven o'clock at night. It appears from the evi-
dence that there had been held in Maytown that night
what was termed an old fiddlers' contest, which lasted
until about ten o'clock. After the fiddlers' contest was
over, a number of young men, including appellant, gath-
ered at the pool room. As appellant started to enter the
pool room, he met Tom Dingus on the steps. Dingus
asked him what had become of the banjo, and asked him
to get it. Thereupon young Hayes went back to the
building where the contest had been conducted, took a
flashlight and looked for the banjo. He seems not to
have found it there, but obtained information from some
schoolboys that the banjo was at John Risner's, and
these boys went to John Risner's and got the banjo for
Hayes. Hayes then took it to Dingus, and he and old
man Dingus went into the pool room. Dingus picked the
banjo for them for a while. Some of the boys listened to
the music, while others were engaged in playing pool and
billiards. After a short time a pistol shot was fired in
front of the pool room. Immediately after this was fired,
the young men left the pool room. A number of them
gathered in front of the Langley Supply Store. Some of
the young men were on the platform in front of the store,
some on the steps leading up to the platform, and others
out in the road. The lights were burning in front of the
store and the road was thus fairly well illuminated. It
appears that about that time quite a number of shots
were fired at different points in the town. Young Hayes
had had his horse hitched somewhere behind the Langley
Supply Store, and had gone back there to catch it, as it

had broken loose. After he had caught and mounted his horse, he rode around to the front of the store where old man Dingus and several others were congregated. Young Hayes had a pistol in his hand and the evidence for the Commonwealth shows that he made a statement about having the "biggest cracking gun in Maytown," and that he was going to "introduce it to the crowd." It seems that Dingus said, "Let's hear it crack." According to the evidence of all the witnesses, Hayes fired his pistol "up through town;" his horse became frightened at this and wheeled around, faced almost directly toward old man Dingus. According to the evidence of three or four witnesses for the Commonwealth young Hayes pointed his pistol at Dingus, took deliberate aim and, after a few seconds, fired a second shot. Thereupon his horse started or Hayes started the horse—it is not clear just which—ran across the bridge over Beaver creek, and, according to the witnesses, "Let out a yell as he crossed the bridge, fired his pistol again and went out of town in a run."

Hayes says that after firing the first shot up through town, his horse wheeled around, almost threw him out of the saddle, and that in an effort to reseat himself in the saddle, his pistol was discharged again without his volition, and that he then rode across the bridge, fired his pistol a third time, and went on home, and he didn't intend to shoot any one, nor did he know that he had shot any one until the officers came to his home later in the night and arrested him. After Hayes fired his second shot, Dingus threw his hands to his breast and said, "Boys, I am killed, and everybody knows who done it." The shot entered Dingus' breast, passed out his back just below the shoulder blade, and caused his death in the course of a few minutes. Young Hayes, after his conviction, filed motion and eight grounds for a new trial; but of these grounds, only three are discussed in his brief, and the others will be treated as waived. McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682.

When this case was first brought before the circuit court by indictment, it soon developed in the evidence that young Hayes was under seventeen years of age at the time of the homicide, and that no proceedings had been had in the juvenile court of Floyd county. An examining trial had been held by the judge of the Floyd county court, however, and the appellant had been held to answer to the grand jury. When the evidence dis-

closed this the court sustained the demurrer which had been filed by young Hayes to the jurisdiction of the court. The order swearing the jury was set aside, the indictment dismissed, and young Hayes was ordered taken before the judge of the Floyd county juvenile court. Thereafter, on February 25, 1924, a hearing was had before the county judge, sitting as judge of the juvenile court, and an order entered holding appellant in custody, referring the case to the grand jury, and recommending that he be proceeded against under the criminal laws of the state.

The judge of the county court was introduced and testified that a petition was filed before him charging appellant with murder and disclosing that he was less than seventeen years of age; that after the petition was filed, he issued a notice of hearing to be had on said petition, to Garrett Hayes and Levina Hayes, the parents of Chester Hayes, and Elijah Goble, the jailer of the county, which notice was duly served on these parties, and which required them to have Chester Hayes before the juvenile court on Monday, February 25, 1924, for hearing on the charge of murder. After the hearing, the court made the order above indicated. By section 331e-5 of the statutes, a discretion is lodged in the juvenile court, by which it is permitted to allow the juvenile to be proceeded against in accordance with the laws that may be in force in this state concerning the commission of crime, and this the juvenile court of Floyd county did. In the present case, he had jurisdiction of the juvenile. The juvenile's parents and the jailer, who had custody of him, were before the juvenile court. The court's action appears to be regular in every way, and its judgment cannot be attacked collaterally.

We have examined the record carefully and we find no merit in the claim made by young Hayes that improper evidence was admitted against him, or that he offered any competent evidence that was not admitted.

This brings us to the last ground that he has discussed in his brief, and that is that the instructions were erroneous. While these instructions were not perfect, still we do not find them open to very serious objection, as far as they go; but the appellant was entitled to one instruction which was not given, and for that the case must be reversed. The court defined murder, voluntary manslaughter and involuntary manslaughter, and submitted those questions to the jury. The court told the

jury if they believed him guilty but entertained a doubt as to whether he was guilty of murder or voluntary manslaughter, they should find him guilty of voluntary manslaughter; but the court should have gone further and should have told the jury that if they believed him guilty but entertained a doubt as to whether he was guilty of voluntary manslaughter or involuntary manslaughter, they should find him guilty of involuntary manslaughter. Section 239 of the Criminal Code requires this.

Upon a retrial of this case, if the evidence is substantially the same, the court will divide its instruction No. 2. The first part of that instruction, relative to murder, he will make instruction No. 1. The remainder of that instruction, relative to manslaughter, he will make instruction No. 2. The definitions which were in his instruction No. 1, he will substitute for the self-defense instruction, which he made No. 4, as there is no occasion for a self-defense instruction under the evidence in this case. The court will also give an instruction by which the jury shall, if they entertain doubt as to whether this is a case of voluntary manslaughter or involuntary manslaughter, find him guilty of involuntary manslaughter, and fix his punishment as defined in instruction No. 7. It is suggested that the reasonable doubt instruction required by section 238 of the Criminal Code cured any possible error that might have been committed by the omission of the instruction required by section 239; but this court has decided that question the other way. See Breeden v. Commonwealth, 151 Ky. 217, 151 S. W. 407.

The judgment is reversed.