## Morgan v. Commonwealth.

### Appeal from Letcher Circuit Court.

1. Homicide.—Single instruction in prosecution under indictment charging willful murder, embracing charges on both murder and voluntary manslaughter, held proper.
2. Homicide.—In prosecution for murder, where the evidence was that defendant shot deceased and also clubbed him with his pistol, failure to charge on involuntary manslaughter, telling jury that if clubbing caused death defendant was guilty of involuntary manslaughter, if error, held harmless where instructions given required finding that shooting caused death, and evidence clearly showed deceased died from shot.

R. MONROE FIELDS for appellant.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

This is an appeal from a judgment sentencing appellant to 10 years' imprisonment, rendered pursuant to the verdict of the jury finding him guilty of voluntary manslaughter under an indictment charging him with the willful murder of Will Adams.

The killing occurred at Mayking, in Letcher county, in the latter part of the year 1924. Adams and Morgan worked in the mines together; they were friends, and quit work about 4:30 p. m. After getting their supper, they went to Mayking. Both were drinking. After staying there awhile, they went to the house of John Morgan, the father of Carl. They stayed there awhile drinking more whisky. They then got in the car with Ernest Morgan, appellant's brother, and went to the schoolhouse where an entertainment was going on. They did not go in, but then went to the house of Ernest Morgan where they drank more whisky. After this, they all drove back in the car to John Morgan's house, and there they drank some more whisky. By this time John Morgan was so under the influence of whisky that they persuaded him to go to bed. They then got in the car and drove back to the home of the deceased, Will Adams. As they went along Will Adams fired his pistol a time or two on one side of the car, and Carl Morgan fired his pistol a

time or two on the other side of the car.  They were both shooting at random and without any cause.  The house of Will Adams was on sloping ground, the back door being on a level with the ground, and the front about 6 feet above the ground and reached by steps.  The proof by the commonwealth as to what then occurred is this:

Mrs. Adams was asleep in the middle room with her baby.  When the car drove up, she came to the door. Carl Morgan asked Adams for a drink of whisky. Adams said, "I haven't got any."  Appellant said, "You are a damn liar, you have."  They commenced jowering. Adams started around to the left of the house to the back door.  Ernest Morgan started after him, saying, "You don't care for me coming, do you, Uncle Will?"  Adams said, "All of you stay away from me."  He kept on to the back door, and appellant came around to the back. Mrs. Adams went back into the house and made a lurch to get her baby.  Just then the shooting occurred.  She heard Adams say "Oh," or something like that; she ran back to the rear room, and Adams came running through the house and wheeled just in front of her.  When he did that, appellant came running in after him with his gun in his hand in a shooting position.  She threw up her hands and commenced begging.  He changed the gun and knocked Adams on the head; Adams sank down on the floor.  Appellant turned to her and said, "Don't you speak nor move."  About that time Ernest Morgan was standing in the door, and his wife ran in and grabbed him.  Mrs. Adams said to them, "You have killed him." Carl Morgan said, "He tried to kill us, but we haven't hurt him; he will be loading coal in the morning."  Carl and Ernest Morgan then put Adams on the bed, and he died a few minutes later.  Adams was shot with a .38 pistol, the ball striking his breast just below the right nipple, going straight through him, and coming out in the back.  He had also some bruises on top of his head where he was struck by the pistol in the house.

According to the proof for the defendant, when they got out of the car, Carl Morgan said, "Uncle Will, give Ernie a drink out of the bottle before he goes back home for the kindness of bringing us home."  Adams said, "I ain't got no damn whisky."  Carl said, "You have; you have that cordial bottle of mine full."  Adams said, "I ain't got any damn thing for you boys."  Appellant says he thought Adams was still joking.  They had been joking all the way, and he took a couple of steps towards

him and said, "Come on and give me the bottle." Adams jerked his pistol out and fired two shots, which missed him. He fell or staggered down, and when he got about half way up he shot two shots. Adams went on into the house and he followed him, thinking that Adams was going to get another pistol he had. When he overtook Adams, Adams tried to fire his pistol at him, and he then struck Adams over the head with his pistol, and Adams fell.

The court gave the jury the following instruction:

> "If the jury believe from the evidence in this case, to the exclusion of a reasonable doubt, that the defendant, in this county and before the finding of the indictment and not in his necessary or apparently necessary defense of Ernest Morgan, did willfully shoot Will Adams with a pistol, and that Will Adams presently died thereby, you will find the defendant guilty; guilty of willful murder, if the shooting was done with malice aforethought—guilty of voluntary manslaughter, if the shooting was done not with malice aforethought, but in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite passion beyond control. If you find the defendant guilty of willful murder, you will fix his punishment at death, or confinement in the state penitentiary for life, in your discretion. If you find him guilty of voluntary manslaughter you will fix his punishment at confinement in the state penitentiary for not less than 2 years and not more than 21 years, in your discretion."

He also gave them the usual instructions on self-defense, on reasonable doubt, and the usual definition of the words "willfully" and "with malice aforethought," which are not complained of. Appellant complains of the first instruction, because it embraced both murder and voluntary manslaughter, and insists that two separate instructions should have been given; but the instruction in the above form has been often upheld and could not have misled the jury. In Hayes v. Com., 210 Ky. 449, 276 S. W. 160, the judgment was reversed for other reasons.

The defendant also complains that no instruction was given on involuntary manslaughter and insists that an instruction should have been given telling the jury that if the pistol, used as Carl Morgan used it, was not a deadly weapon and the blow by the pistol caused his

death, they should find him guilty of involuntary manslaughter. But it will be observed that by the instruction of the court the jury could not find appellant guilty unless they believed from the evidence, beyond a reasonable doubt, that appellant willfully shot Will Adams with a pistol, and that said Adams "presently died thereby." Under the instructions which the court gave, the jury could not find the defendant guilty at all unless Adams died from the shooting. The defendant proved by two witnesses whose testimony was not substantially contradicted that they examined Adams' head after he died, and that the wounds on his head were simply flesh wounds, not going down to the skull, and the testimony, that the ball of the .38 pistol entered just below the right nipple and went practically square through the body was undisputed. So it was manifest that Adams died from the pistol shot. A man will frequently walk a few steps before he falls from such a wound. Under the evidence, clearly no substantial right of the defendant was prejudiced by the failure to give an instruction on involuntary manslaughter.

The evidence tends strongly to the conclusion that this was simply a drunken brawl, and that the deceased was not killed in self-defense.

Judgment affirmed.