## Newsome v. Commonwealth.

(Decided February 8, 1929.)

CAUDILL & TACKETT for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At his trial in the Floyd circuit court under an indictment charging him with murdering Oscar Daniels,

the appellant and defendant below, Robert Newsome, was convicted of voluntary manslaughter, and punished by confinement in the penitentiary for a period of 15 years. His motion for a new trial was overruled, and on this appeal from that order it is argued in brief of his counsel that the court erred (1) in overruling the demurrer filed to the indictment; (2) in the admission and rejection of testimony, and (3) in the instructions submitted to the jury, each of which will be disposed of in the order named.

Both a general and a special demurrer were filed by defendant's counsel, the one to the indictment and the other to the jurisdiction of the court. The general one filed to the indictment was properly overruled, and which seems to be conceded by counsel in their brief, since they make no reference thereto. The supposed foundation for the special demurrer to the jurisdiction of the court, as argued in brief, was that defendant was a juvenile slightly under the age of 17 years at the time he shot and killed Daniels, and that the indictment did not disclose that he first had been apprehended by the juvenile court, and that it properly transferred the prosecution to the circuit court, and which we in the cases of Commonwealth v. Franks, 164 Ky. 239, 175 S. W. 349; Talbott v. Commonwealth, 166 Ky. 659, 179 S. W. 621; Commonwealth v. Davis, 169 Ky. 681, 185 S. W. 73; Waters v. Commonwealth, 171 Ky. 457, 188 S. W. 490; Baughman v. Commonwealth, 206 Ky. 441, 267 S. W. 231; Hayes v. Commonwealth, 210 Ky. 449, 276 S. W. 160, and Goodfriend v. Commonwealth, 216 Ky. 573, 288 S. W. 330, pointed out was necessary in order to confer jurisdiction upon the circuit court to try such juvenile offenders. It is strenuously argued that under the doctrine of those cases the circuit court had no jurisdiction to try defendant and that the special demurrer should have been sustained. In answer thereto it might first be stated that the court made no ruling on the special demurrer, or, if so, the record fails to contain it, and under numerous decisions of this court the question might be considered as thereby waived, if it is one that could be waived, but which the Waters case and perhaps others of those cited held could not be done. However, a special demurrer does not reach any question except one that is disclosed by the pleading, indictment, or writing demurred to, and there is nothing appearing on the face of the indictment in this case to show the age of defendant, and the question sought to be raised by the special demurrer was not presented by filing

it. Moreover, the age of defendant nowhere appears in the record, except in the judgment of the juvenile court referring the prosecution to the grand jury of Floyd county; and which counsel earnestly insists was and is insufficient to show jurisdiction in the juvenile court, and likewise insufficient to show the proper transfer to the Knox circuit court.

If we should agree with counsel that the judgment in the juvenile court was insufficient to sustain its jurisdiction, then the record would be utterly barren of any testimony whatever relating to the age of defendant, and the entire argument of this error would fall to the ground. It is true that in the Waters case, supra, and perhaps others of the above cited ones, it was held by us that the question of the jurisdiction of the circuit court over juvenile offenders was raised whensoever, and at any stage of the proceedings, upon its appearing that defendant was a juvenile coming within the jurisdiction of the juvenile court; but, when that fact does not appear at any place in the record, we cannot consider it when only appearing in briefs of counsel.

The order and judgment of the juvenile court, supra, recites that the parents of defendant had been duly summoned and the father was present at the hearing in that court, as was also defendant and his attorney, and that the court from the evidence introduced found, "That the defendant Robert Newsome is under the age of 17 years," and "is of the opinion that the defendant be prosecuted under the laws of the state of Kentucky, governing such crimes, and that he be held to await the action of the Floyd county grand jury." It is insisted that the commonwealth should have introduced the entire record of that court so as to affirmatively establish its jurisdiction as prescribed by statute and by giving the required notices to the necessary parties as also prescribed therein, and that the introduction of only the judgment of that court, with the indicated recitations therein, was insufficient to show a compliance with the juvenile statute, and, consequently, did not confer jurisdiction on the circuit court. We repeat, that if we should sustain that contention, then the fact of defendant being a juvenile would be entirely absent from the record, and, of course, in that event, the question would not be presented in this case. But we disagree with counsel in the contention made by them as to the insufficiency of the judgment to show jurisdiction in the juvenile court. In the Waters and in the

Goodfriend cases, supra, and perhaps others of those cited, it was pointed out that the county judge, sitting as a juvenile court, was one of original jurisdiction, and that a circuit court in the trial of offenders coming within the purview of the juvenile statute was one of limited or secondary jurisdiction, and that presumptions as to jurisdictions of such courts of general or limited jurisdictions would apply to such courts in cases involving juvenile questions. That being true, the rule as to presumptions in favor of judgments of courts of original and general jurisdiction must apply to the Floyd juvenile court in this case. As we above pointed out, it is recited in the judgment that notice was given to the proper parties, and that a hearing was had followed by the disposition of the case. Under the rule relating to such presumptions, as applicable to such courts of original and general jurisdiction, we must presume that defendant was rightfully apprehended by that court, and that it followed the requirements of the juvenile statute, in order to confer upon it jurisdiction of the person in charge, and that it also gave the proper notice to the necessary parties in order to enable it to render a valid judgment, and which judgment in this case was practically the same as that rendered by the juvenile court in the Hayes case, supra, and which we held sufficient to confer jurisdiction on the circuit court of the county to try defendant on the charge there involved. We therefore conclude that under no aspect of the case is there any merit in error 1.

■ In disposing of error 2, it is perhaps proper to make a brief statement of the substance of the testimony introduced at the trial. The deceased was also an infant near 17 years of age, and he and defendant appear to have been rivals for the affections of one Lizzie Pack. There had been some exhibitions of jealousy between them, but which the testimony preponderates to show was mostly on the part of defendant, he conceiving the idea that the deceased stood higher in the affections of Miss Pack than did himself. At any rate, the commonwealth proved that on Saturday night before the killing on Tuesday night defendant stated, in the presence of Miss Pack, her mother, her sister, and others, that he intended to kill deceased, and cursed the latter, and which seems to have been provoked because defendant conceived the idea that Miss Pack would not go with him on that occasion, but was waiting for Daniels. Either on that night, or another near to it and before the killing, there were some angry

words passed between deceased and defendant at or just outside of a picture show in the town of Drift, in which the killing occurred. On the late afternoon of Tuesday, the day of the killing, and immediately preceding it, deceased and defendant came down the railroad to the town of Drift, traveling a distance of between a quarter and half a mile. Deceased had a pistol, and defendant claims that he had none, and that deceased was cursing and threatening him all the way on that trip, and that, when he got to Drift, he went into the store of King Bros., where he had been sleeping a part of the time with one of the proprietors, and went into a side room and procured a pistol, during which time deceased was on the porch at the front of the store; that he came out of the store with that pistol, and deceased started down the steps, followed by defendant, and just after they got upon the ground between the steps and the street deceased turned and fired two shots at him, and that he then fired at deceased five times in his necessary self-defense. He is corroborated in that testimony, to some extent, by his brother and sister-in-law and by his sister and brother-in-law, who were some 75 feet or more from the shooting, standing in the open, although the witnesses for the commonwealth and others for defendant stated that it was then practically dark. On the other hand, three persons at the store positively testified that, as soon as defendant got even with the deceased after passing down the steps, he commenced shooting the deceased, and shot him twice, each of which was sufficient to produce death, and that deceased afterwards fired at defendant, but did not hit him. Defendant then went upon a hill at the back of the store and fired his pistol twice. He then appeared at the homes of two or three persons, one of whom was his brother, and stated that he was going to ''take to the bushes,'' which he later did, and was finally arrested in Huntington, W. Va., where he had assumed the name of ''Robert Lee'' instead of his true name of Robert Newsome.

Some short time, perhaps as much as an hour after the shooting, defendant appeared at the home of one of the King brothers with whose pistol, obtained in the manner hereinbefore indicated, the killing was done. While there he flourished the pistol and punched the muzzle of it against the body of King and to which the latter testified, and which it is insisted under this ground was prejudicially erroneous. The commonwealth, in eliciting that testimony, was seeking to prove that defend-

716

ant so conducted himself in an effort to demonstrate to the witness the way and manner he had shot the deceased; but the witness did not remember enough to establish that fact, and it is therefore argued that it was proof of an independent crime, having no bearing upon the issues in the case, and therefore prejudicial. In the first place, we are not altogether convinced but that proof of such demonstrations following so closely the commission of the homicide was not admissible, for the purpose of showing defendant's frame of mind; but, without deciding that question, the only objection made to the questions of the commonwealth's attorney was the one inquiring of the witness whether defendant mentioned the difficulty with Daniels. The witness did not state that the difficulty was mentioned on that occasion, so that all of the remaining portion of the witness' testimony was not objected to, nor was there any motion made to exclude it from the jury. The only one made by counsel was, ''To exclude from consideration of the jury the conversation with reference to this difficulty.'' There being no testimony with reference to the difficulty, the motion to exclude had nothing to operate upon.

It was testified for the Commonwealth by one Martha Pack that, after defendant had been arrested and executed bond, he was at the home of witness, and she was asked:

''Q. What did he come there for, if you know? A. He said he was begging for mercy, he told my husband and me that he was begging for mercy.
''Q. Did he have a talk with you in regard to what you were going to testify in this case? A. He said he did not want us to forget him when we got on the witness stand. He had a pint of liquor and offered us a drink and my husband told him to get out.''

It is now complained, under this ground, that the testimony with reference to defendant having a pint of liquor on that occasion was grievously prejudicial, in that it charged defendant with an independent offense of a poisonous nature to the minds of the members of the jury. In the first place, the answer of the witness did not show that defendant unlawfully possessed the whisky that he offered to her and her husband on that occasion; and, secondly, if it had so appeared, then the testimony was competent to prove that defendant was attempting

to corrupt the witness and her husband with a drink of whisky. To our astonishment, several pages of the brief of counsel are taken up with discussion of cases wherein testimony with reference to the unlawful traffic in whisky by defendant, on trial for other offenses, was condemned, and which we still adhere to and approve. But they have no earthly application to the facts under which the complained of statement was made by defendant in this case. As testified to by the witness, he was attempting to corrupt her and her husband by offering them whisky in the way of a bribe for their favorable testimony, and the cases relied on in support of the argument of counsel have no application whatever.

Another complaint is made with reference to the cross-examination of Tilden Collins, a witness introduced by defendant. The witness had, in an incredible fashion, given material testimony on behalf of defendant in his examination in chief, some of which was in contradiction to that testified to by the Packs on behalf of the commonwealth, and the cross-examination sought to develop his animosity against them because they had theretofore procured him to be indicted for possessing liquor, and in so doing he was asked and answered these questions:

"Q. They have indicted you a time or two? A. I guess they have, I don't know.

"Q. Indicted your brother and you, didn't they? A. I guess they have.

"Q. For having liquor in your house? A. I don't know what they indicted us for."

There was no objection to that question with reference to obtaining an indictment for possessing liquor, nor was there any objection to the answer, nor a motion to exclude it, and for that reason alone no complaint of it can be made on this appeal. But, if it had been objected to, it did not relate to defendant, but only to the witness, and was an inquiry about a purely collateral matter, and by no stretch of the imagination may be regarded as prejudicial error against defendant.

Defendant introduced a number of witnesses to prove the bad character of the Packs for both morality and credibility. One of the numerous witnesses introduced for that purpose was C. L. Collins. He was asked if he was acquainted with the general moral reputation of Mrs. Pack, and he answered that he had heard

some little talk about it. He was then asked: "Is that reputation good or bad?" To which the court sustained the commonwealth's objections, and the witness did not answer, but defendant's counsel then made no avowal. The witness was then asked if he was acquainted with the general moral reputation of Lizzie Pack, and he answered, "Acquainted with her same as the other." He was then asked: "Is that reputation good or bad?" and the court sustained the commonwealth's objection to it, but there was no avowal at that time, but, at the close of the witness' testimony there was an avowal as to the answer he would make concerning the reputation of Mrs. Pack and her daughter, Lizzie. The court was no doubt of the opinion that the witness had not properly qualified and with which we are inclined to agree, but, if mistaken in that, then the reputation of the Packs had been thoroughly attacked by a number of other witnesses, and the error, if any, in not allowing the witness to so testify was, to say the least of it, of but little, if any materiality, since their character for morality was not sought to be established by the commonwealth. One or two other errors with reference to the admission and rejection of testimony are argued in brief, but they are so glaringly immaterial as to not merit discussion.

■ The only objection urged against the instructions is that the one submitting defendant's right of self-defense, No. 3, left it for the jury to determine whether or not defendant was in actual or apparent danger at the time he shot and killed deceased, when, as argued, he had the right to defend himself, if he believed at the time, in the exercise of a reasonable judgment, that such danger existed, and a number of cases are cited wherein we held that it was error for the court to leave that question to the jury, and to not submit defendant's belief in the exercise of a reasonable judgment as to the existence of the danger. We have no quarrel to make with such cases, which are numerous, and which announce a principle everywhere recognized in the administration of the criminal law. But counsel is clearly in error, since the instruction says, "If you believe from the evidence that at the time he (defendant) so shot and wounded him (deceased) the said Oscar Daniels was then and there about to inflict death or great bodily harm upon defendant, or if defendant believed at the time in the exercise of a reasonable judgment that said Daniels was then and there about to inflict death or great bodily harm upon

him," etc. It thus appears that the court submitted in most appropriate language the very thing of which com plaint is now made, but which was entirely omitted in the cases cited and relied on in brief.

The great preponderance of, as well as the most convincing, testimony in this case supports the conclusion that defendant unnecessarily, and not in his self-defense, shot and killed deceased. Indeed, it would be somewhat of a task for either a court or a jury to believe that defendant was excusable under his right of self-defense after separating from deceased and arming himself, and then returning to the scene of the conflict, which immediately occurred, and which the testimony most convincingly shows he sought out and brought about.

After a careful reading of the record, we are convinced that defendant had a fair and impartial trial, and the judgment is affirmed.