### Johnson v. Commonwealth.

(Decided June 21, 1932.)

LEEBERN ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Jointly indicted with Boyd Herald in the Breathitt circuit court for the murder of Talbert Turner, Johnson on separate trial was found guilty and his punishment fixed at imprisonment for life. He has appealed, relying for reversal of the lower court's judgment on the following grounds: (1) The verdict of the jury is not supported by and is flagrantly against the evidence; (2) newly discovered evidence material to his defense; (3) improper remark of the commonwealth's attorney in the closing argument to the jury; (4) alleged error in instructions to the jury.

The tragedy occurred at or near the confluence of Sebastian branch with Middle fork of the Kentucky river, and, while appellant admits he shot and killed Turner, he attempts to justify his act on the ground of self-defense.

Undisputed facts developed by evidence show that for sometime prior to the shooting appellant, deceased, and a number of others were gambling at a point some distance from the scene of the difficulty; however, appellant testified that his only participation in the game was on behalf of a friend for whom he played a few hands. When the game broke up, a number of the participants, including appellant, left for their homes, going toward the mouth of the Sebastian branch, and some of them

stopped at the roadside and talked while Turner rolled a cigarette. Up to the time and in fact until immediately before the shooting occurred, nothing had been said or done to indicate anything but the best of feeling between appellant and deceased. There is evidence that the crowd had some liquor of which they had partaken, but no showing that any of them were intoxicated to a noticeable degree. Deceased had a .32 special pistol in a front pocket of his pants, the handle of which was visible to all. Appellant also had a pistol, but there is a conflict in the evidence as to the character of pistol he had. Some witnesses for the commonwealth testified that it was a Lugar, while appellant and some of his witnesses testified that it was a .32 special, similar to the one owned by deceased. There is also a sharp conflict in evidence as to what occurred after appellant and deceased left the others at the roadside. Before leaving there, appellant told the others that he had sent his son, Henry Johnson, for some liquor or for some money with which to purchase liquor. Appellant and deceased went over a bank toward the river, and, immediately after getting out of view of the others in the party, five shots were fired in rapid succession. Following these shots, appellant reappeared with a pistol in either hand and told the others that he had shot Turner. None of the witnesses who testified for the commonwealth claimed to have witnessed the shooting. Some of them testified that when appellant came back over the river bank he stated that he shot Turner with his (Turner's) pistol. There is evidence for the commonwealth that deceased had started to leave, but appellant told him not to go, as he had sent his son for some whiskey; that appellant's son called to him from over the river and he and Turner started in that direction; that appellant had his arm over Turner's shoulder and stated that the latter was the best friend he had. It further appears in evidence that some of the balls entering appellee's body passed through and lodged in his clothing and some that were cut out of his body were .32 specials. There is also evidence that shortly after the killing appellant called from the opposite side of the river to inquire if Turner was dead, and, on being informed that he was, said "G—— d—— him, take him where he belongs."

Appellant testified that, when his son called to him from the opposite side of the river and he started to meet

him, he was followed by Turner. His statement as to what occurred after they passed out of view of the rest of the party is as follows:

> "When he got ready to turn around the bushes Talbert ran up to me and said, 'Walker you treated my people G—— d—— dirty!' Me and one of his nephews had trouble two years ago, I said, 'Talbert you are drinking, no use raising no talk about that.' I says, 'If you are aiming to raise a racket with me about that, you go on down there with them boys, I will go over here where Green Johnson is and go home.' I walked about three steps from him, he pulled his pistol out and said, 'Walker, what did you cut Dee for' and spoke the second time before I spoke. I said, 'He run me down, I had it to do to save my own life.' He said, 'You are a G—— d—— liar, I aim to kill you,' turned his pistol on me, went to snapping it, I jerked my pistol and my pistol fired and he was whacking at me with his pistol and was still doing that all the time until he fell."

Henry Johnson, appellant's son, and Green Johnson testified that they were together on a dam across the river and saw the difficulty and heard what was said. Their evidence corroborates that of appellant in all material details. Some of the other witnesses for the defense who were present but out of view of the difficulty corroborate appellant as to some of the statements made by Turner immediately before the shooting. Appellant denied saying that he did the shooting with Turner's pistol, and testified that his pistol was also a .32 special and not a Lugar. He stated that, when he told others he had killed Turner, he also said to them that he had to do it. He denied that he cursed when told that Turner was dead, and testified that he told others to take care of him and to take him where he belonged. He is also corroborated by other witnesses in these statements.

From the foregoing, it is apparent that the evidence was sufficient to take the case to the jury, and the court did not err in overruling appellant's motion for a peremptory instruction to find him not guilty. Not only so, but the evidence is sufficient to support the verdict of the jury. While evidence of appellant strongly tends to make out a case of self-defense and he is corroborated by

612

witnesses who profess to have seen the difficulty, a jury who heard the evidence detailed by witnesses and who had the opportunity of observing their conduct and demeanor on the witness stand permitted the evidence of the commonwealth's witnesses and the proven facts and circumstances to outweigh that of appellant and his witnesses in determining their verdict.

No rule is better established in this jurisdiction than that a case will not be reversed merely because a jury gave greater credit to the evidence of one set of witnesses than it did to that of another. Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298; Cook v. Commonwealth, 232 Ky. 613, 24 S. W. (2d) 269; Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329. Under our Constitution and laws it is the province of the jury and not of the appellate court to determine the guilt or innocence of one standing charged with crime, and the verdict of a properly instructed jury will not be disturbed if there is competent evidence forming a basis for their finding. Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190; Blankenship v. Commonwealth, 228 Ky. 830, 16 S. W. (2d) 478. It is only when a verdict is flagrantly and palpably against the evidence that this court is warranted in disturbing the verdict of the jury. Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629; Burchett v. Commonwealth, 204 Ky. 454, 264 S. W. 1066. Measured by these rules, the court would not be justified in disturbing the verdict in this case.

In amended motion and grounds for new trial, it is made to appear that appellant discovered material and important evidence after the verdict was returned. The evidence alleged to have been discovered is statements made by deceased to the effect that he would kill appellant the first time he had a chance to do so, and the newly discovered witnesses are Willie Deaton and Green Bowling. While in the motion and grounds for new trial and in the affidavits of the newly discovered witnesses it is made to appear that they did not tell appellant about the statements made by deceased until after the verdict had been returned, there is no showing, either in the motion and grounds nor in the affidavits in support thereof, that appellant used any diligence whatever to discover this evidence, or that it could not have been discovered by the exercise of reasonable diligence on his part. A new trial cannot be granted on the grounds of newly discovered

evidence unless it is disclosed by affidavit that reasonable diligence has been exercised. Brennon v. Commonwealth, 169 Ky. 815, 185 S. W. 489; Chilton v. Commonwealth, 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851; Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318.

The only reference we find in the record to the alleged improper argument or the misconduct of the commonwealth's attorney is contained in the motion and grounds for new trial. The bill of exceptions contains no reference to the alleged improper argument of the commonwealth's attorney and no objections or exceptions thereto. Alleged error based on improper argument or misconduct, to be available on appeal, must be shown by the bill of exceptions. Goins v. Commonwealth, 223 Ky. 211, 3 S. W. (2d) 631; Hord v. Commonwealth, 227 Ky. 439, 13 S. W. (2d) 244; Bruner v. Commonwealth, 225 Ky. 713, 9 S. W. (2d) 1080; Cooley v. Commonwealth, 185 Ky. 142, 214 S. W. 898.

While it is asserted by counsel for appellant that the instructions given to the jury are erroneous, we find that all the argument in brief on that question goes to the refusal of the court to give a peremptory instruction to find accused not guilty rather than to defects in the instructions given. What we have already said as to the propriety of the court's refusal to give the peremptory instruction is sufficient on that question. Counsel has not pointed out any defects or impropriety in the instructions given, and an examination reveals none.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.