## Strong v. Commonwealth.

(Decided Jan. 10, 1933.)

HENRY L. SPENCER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

The appellant, Doshia Strong, lived with her husband in a two-room house on the side of a mountain in Breathitt county. Back of the house was a small barn and pine tree in which her chickens roosted. On the morning of Thursday, May 5, 1932, her husband went to the Riverside Institute, where their son was in school, to bring him home. He spent the night at the school. During the night, according to the testimony of the defendant and her 10 year old daughter, who were alone in the cabin, there was a noise among the chickens, and she shot a .22 rifle three times through the door transom in the general direction of the chicken roost. On the following Tuesday morning her husband discovered the partially decomposed body of Charlie Sizemore near the chicken roost. He immediately went to the county seat, notified the authorities, and the coroner and a jury went to the scene. They found the body about forty yards up the mountain from the house with a bullet hole in his temple, a fried egg in one pocket and a corn pone in another. Explorations were made in the head for the bullet, but it could not be found.

The coroner, and perhaps another, expressed the opinion that Sizemore had been shot with a .32 or larger caliber bullet. But those opinions are brought in question by the evidence. Mrs. Strong promptly told of the occurrence of the previous Thursday night, and said if Sizemore had been shot with a .22 she supposed she had killed him. In addition to these statements, which were repeated several times, and the truth of which is not brought into question by the evidence, there was testimony of statements made by her both before and after the body was found which may be construed as showing animosity towards the deceased (engendered in part by his objection to her husband preaching), and as being boasts of what she intended to do and had done with regard to killing him. However, the testimony as to the statements susceptible of proving culpability was

given by unfriendly witnesses. She says, "I handled no such talk to" the witnesses, or she explained away the incidents. Upon that evidence appellant was found guilty of willful murder and sentenced to the penitentiary for life.

While the evidence does not show her to be a paragon of peace or virtue, she having already spent a season in the penitentiary, yet it is extremely doubtful if the evidence is sufficient to sustain the verdict. However, we need not pass upon that point, for the judgment must be reversed upon another ground.

Instructions were given covering murder, voluntary manslaughter based upon sudden affray, sudden heat and passion, and the reckless and grossly careless use of firearms, and on involuntary manslaughter based upon an unintentional, though careless, use of a pistol or gun. So also were given instructions on self-defense, the prevention of a felony, and accidental shooting. Then an instruction provided that the jury should find the defendant not guilty if they had reasonable doubt of her having been proven guilty, or "if you find her guilty but on all the evidence have a reasonable doubt as to whether she has been proven guilty of willful murder or voluntary manslaughter or involuntary manslaughter you should in that event find her guilty of the lower offense, involuntary manslaughter, and fix her punishment accordingly."

It is to be noticed that no provision was made for finding the accused guilty of voluntary manslaughter in case of doubt as to the degree of the offense. Unless the jury believed her guilty of murder, they could find her guilty only of involuntary manslaughter. This destroyed, or at least affected, her right to be found guilty of voluntary manslaughter according to the terms of all the instructions. While this omission was doubtless an inadvertence, nevertheless it is to be regarded as prejudicial error against the rights of the accused. Hayes v. Commonwealth, 210 Ky. 449, 276 S. W. 160; Hatfield v. Commonwealth, 230 Ky. 630, 20 S. W. (2d) 461.

The argument of the commonwealth's attorney, about which complaint is made, was improper, and should have been omitted; but it is not necessary to pass upon the question of its prejudicial effect.

Judgment reversed.