## Maggard et al. v. Commonwealth.

(Decided Jan. 22, 1935.)

J. H. ASHER and J. M. BAKER for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Kermit Maggard and Claud Maggard were charged with the crime of grand larceny by an indictment returned by the grand jury of Leslie county, alleged to have been committed by unlawfully and feloniously stealing, taking, and carrying away eight head of cattle of the value of $200, the personal property of Jasper Baker, with the felonious intent to convert the same to their own use and permanently deprive Baker thereof. The indictment does not charge the cattle were so taken "without the consent, or against the will," of Baker. On a trial before a jury, under the instructions of the court, they were found guilty and the punishment of each fixed at confinement in the state reformatory for a period of two years.

They are complaining of the insufficiency of the indictment and the action of the court declining to direct a verdict of not guilty.

The record discloses that the Maggards entered a plea of not guilty and were tried without demurring to the indictment. It states a public offense, though defectively, and for this reason was demurrable. To avail themselves in this court of the defect in, or the insufficiency of, the indictment, it was incumbent upon them to demur thereto in the circuit court. Baldridge v. Commonwealth, 88 S. W. 1076, 28 Ky. Law Rep. 33; Daniels v. Commonwealth, 181 Ky. 365, 205 S. W. 968; Bailey v. Commonwealth, 198 Ky. 629, 249 S. W. 779; Madden v. Commonwealth, 202 Ky. 782, 261 S. W. 273; Delong et al. v. Commonwealth, 225 Ky. 461, 9 S. W. (2d) 136; Hawks v. Commonwealth, 197 Ky. 196, 246 S. W. 116; Johnson v. Commonwealth, 240 Ky. 337, 42 S. W. (2d) 341. The rule is otherwise where the indictment fails to charge an offense known to the law. Hopper v. Commonwealth, 250 Ky. 405, 63 S. W. (2d) 467; Morgan v. Commonwealth, 202 Ky. 211, 259 S. W. 46; Pierce v. Commonwealth, 210 Ky. 465, 276 S. W. 135; English v. Commonwealth, 216 Ky. 608, 288 S. W. 320.

To properly charge the crime of grand larceny, it is essential that the indictment allege the property was taken "without the consent or against the will" of the owner. Hudspeth v. Commonwealth, 195 Ky. 4, 241 S. W. 71; Gray v. Commonwealth, 195 Ky. 307, 242 S. W. 8; Blackburn v. Commonwealth, 230 Ky. 603, 20 S. W. (2d) 441; Page v. Commonwealth, 235 Ky. 657, 32 S. W. (2d) 17. Failing to demur to the indictment, the Maggards cannot now rely on its technical insufficiency.

Their right to a peremptory instruction necessarily must be determined by the evidence. They entered a motion for a peremptory instruction at the close of the evidence of the commonwealth. Without standing on their right thereto, they proceeded to testify and introduce other evidence in their behalf; therefore, their right to it must be determined on the whole of the evidence. Lickliter v. Commonwealth, 249 Ky. 95, 60 S. W. (2d) 355.

The testimony is brought here in the narrative, and for this reason we are deprived of its full import. Jasper Baker testified he was the owner of the cattle, resided in Leslie county, about twenty miles from the home of the Maggards. The cattle were described by him thus: Red steer with white face; red steer with white spots in the forehead; pale red steer; "red brindle" with white spots on his body; a roan; a black or brown steer; a red heifer and a red heifer with white spots on her body. They were yearlings. They were taken during the night of the 14th or 15th of May, 1933, from "below his house" on "Bad Creek," without his knowledge or consent. The Maggards, on or about the night of the 14th or 15th of that month, stopped at the home of Willard Pennington who resided within two miles of Baker, and "tried to borrow a light," claiming they were going home. John Coldwell, who resided in Leslie county, on the road leading from Baker's to the home of the Maggards, deposed that in May, 1933, "Kermit Maggard stopped at his store in the night time and bought some smoking tobacco." Oscar Goforth, who resided at Gatun in Harlan county, about four miles from Harlan town, testified that about the middle of May the Maggards came to his home early one morning and requested him to permit them to put cattle in a lot around his barn. There were eight of them and his description thereof tallied with that of Baker. After the cattle remained in the lot about two hours,

the defendants drove them away. E. C. Cochran, with a truck, at the request of the defendants, "hauled the cattle from Gatun" to where they were sold by the Maggards for $48. Lester Pace stated that he heard a boy ask one of the defendants "where they got the cattle," and one of them jocularly remarked, "They might have stolen them." Willie Boggs assisted in arresting Kermit Maggard on the charge of stealing them. While he was under arrest, he (Boggs) asked Kermit "if he had been to Harlan that week" and the defendant said "he had not." V. A. Maggard, county judge, held an examining trial of the defendants and on the day of the trial he asked Kermit "where he got the cattle" and his (V. A. Maggard's) recollection was Claud Maggard said "from Jess Helton in Harlan." Claud Maggard, at the time of the trial, was twenty-one and Kermit nineteen years of age. They resided at the home of their father at Gatun, Harlan county. Denying they stole the cattle, they claim that on the morning of the 14th or 15th of May, 1933, they purchased them at Sunshine of John Kates, Cora Lee Vowel, and Mrs. Freeman; drove them in the direction of their home to Oscar Goforth's barn lot. The cattle were taken to market in Cochran's truck. Their excuse for selling them immediately was, "They were hard to drive, being yearlings." Carrie Brazell, a colored woman, residing at Georgetown, an addition to the town of Harlan, testified that on the morning of the 14th or 15th of May, the Maggards came to her home and she sold them one "brindle heifer." Cora Lee Vowel, who resided at Sunshine, deposed that she saw the Maggards at Sunshine on the morning of the 14th or 15th of May and sold them a "pale red yearling"; and was present and witnessed their purchase of John Kates, five head of cattle, and of Mrs. Freeman, one yearling. Betty Muncy, who resided at Sunshine, testified that she was present and saw them buy the five head of cattle of Kates; one of Cora Lee Vowel and another of Mrs. Freeman; and that she let her boy "help drive them away." Claud Maggard denied that he had "stopped at Willard Pennington's to get a light."

Neither of the Maggards denied the testimony of Judge Maggard or that of Coldwell. They do not account for their being in Leslie county on the night the cattle were stolen; nor explain their presence in that

county in the nighttime on or about the day on which the cattle were stolen.

This summary of the evidence shows that the Maggards were in the vicinity of the home of Jasper Baker on the night the eight head of yearlings were stolen; the next morning they were on the road leading from Baker's to their home in the possession of cattle, corresponding in age, sex, size, and color with Baker's. The evidence presented two theories; one, the cattle were Baker's and were stolen by the Maggards; and the other, the Maggards purchased them from their owners and immediately trucked them to market. With the evidence thus conflicting, it was entirely with the jury to accept or reject either the theory of the commonwealth or that of the defendants.

The evidence in a criminal case will not be reviewed by this court to see if it justifies a conviction. Cornelius v. Commonwealth, 15 B. Mon. 539; Patterson v. Commonwealth, 86 Ky. 313, 5 S. W. 765, 9 Ky. Law Rep. 481; Blaylock v. Commonwealth, 239 Ky. 793, 40 S. W. (2d) 382. The determination of the question of the guilt or innocence of the accused was exclusively within the province of the jury and not this court. Johnson v. Commonwealth, 244 Ky. 608, 51 S. W. (2d) 932; St. Clair v. Commonwealth, 245 Ky. 730, 54 S. W. (2d) 1; Miller v. Commonwealth, 236 Ky. 448, 33 S. W. (2d) 590. The rule is, where there is any evidence to support the verdict or tends to sustain it, though such evidence is entirely circumstantial, it is for the jury to weigh and determine whether it justifies the conclusion of guilt. We are therefore without power to pass on the sufficiency of the evidence and it is only where there is no evidence to sustain the verdict that we can set it aside. Jones v. Commonwealth, 230 Ky. 24, 18 S. W. (2d) 287; Bourne v. Commonwealth, 234 Ky. 842, 29 S. W. (2d) 561; Bright v. Commonwealth, 235 Ky. 781, 32 S. W. (2d) 351; Ely v. Commonwealth, 239 Ky. 638, 40 S. W. (2d) 276; Newsome v. Commonwealth, 240 Ky. 333, 42 S. W. (2d) 306; Swanigan v. Commonwealth, 240 Ky. 504, 42 S. W. (2d) 726; except when it is flagrantly against the evidence, Mattingly v. Commonwealth, 240 Ky. 625, 42 S. W. (2d) 874; Tussey v. Commonwealth, 241 Ky. 91, 43 S. W. (2d) 351; and it is only flagrantly against the evidence when it is so shockingly against it as to show passion or prejudice or other unpermissible, controlling factors, Handshoe v. Common-

wealth, 245 Ky. 10, 53 S. W. (2d) 195. We are without right to disturb it because it is against the preponderance of the evidence. Adkins v. Commonwealth, 245 Ky. 503, 53 S. W. (2d) 949.

The witnesses' credibility and the weight to be given their evidence were entirely for the jury. It did so on the evidence herein and its right to do so is beyond question.

Wherefore, the judgment is affirmed.