## Maddy v. Commonwealth.

February 7, 1947.

C. F. See, Jr. and M. J. See for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, and Thomas S. Burchett for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Hubert Maddy was indicted for the murder of Fred Pack. A trial resulted in a manslaughter conviction and his punishment was fixed at confinement in the penitentiary for five years. In the motion for a new trial six errors were assigned, but the only one argued in appellant's brief is that a directed verdict should have been given in his favor. Therefore, a short resume of the evidence is necessary.

Maddy was chief of police in the town of Louisa and Pack was a constable who worked at night on the police force. The two men had some disagreement concerning the making of an arrest and Pack was of the impression that Maddy was going to cause his discharge and have the town council employ Lyman Workman in his place.

Around midnight on April 15, 1946, Pack saw Maddy and Workman in a truck at a filling station. With his hand on his pistol Pack called Maddy vile names and said to him, "Me or you one has to leave town by tomorrow night." Shortly thereafter Pack told Mack Crutcher, "I just come within a hair of killing Hubert Maddy." The next day Maddy saw Pack on the street about noon and to avoid meeting him went into a garage until after Pack passed, when Maddy proceeded to the Hamburger Inn, where he usually ate lunch.

Upon arriving at the restaurant Maddy went into the kitchen, seated himself at a table and ordered lunch. Soon thereafter Pack also went to the restaurant and made three trips to the kitchen, on one of which he said to Maddy, "One of us will die before dark if you don't leave here." Several witnesses introduced for the defense testified that in or about the restaurant shortly before the shooting, Pack said in their presence that he was going to shoot or was going to kill Maddy. It was testified by Maddy that on one of Pack's trips to the kitchen he said to Pack, "Let's forget about this and stop it." To which Pack replied, "Hell no I will not forget it." Maddy's testimony is that on Pack's fourth trip to the kitchen when Pack got to the swinging door between the dining room and the kitchen that he struggled a minute with the door and a waitress, who was trying to keep him out of the kitchen, then stepped back and reached for his gun, and he emptied his pistol at Pack, firing six shots as fast as he could. Maddy is corroborated as to how the shooting occurred by Vivian Adams, the waitress who was at the door trying to keep Pack out of the kitchen at the time of the shooting.

But the evidence for the Commonwealth contradicts Maddy in reference to the shooting. Pack was seated at the counter on the last stool which measured 18½ feet from the door leading into the kitchen. Albert Hannah, Mack Burke, Lewis Adams, Amos See, and perhaps other witnesses, testified that after Pack drank a cup of coffee at the counter he got off the stool and with his hands hanging naturally at his side took from two to five steps in the direction of the kitchen door when Maddy fired through the door. Lewis Adams testified that Pack was about halfway between the stool and the door when Maddy opened fire. Some of these witnesses testified that Maddy fired two, or three, shots through the door, then opened it and emptied his pistol into Pack after he had fallen. Lewis Adams and Eddie Ann Crum both testified that after Pack fell Maddy struck him in the head with his pistol.

Charley Allen, a defense witness, testified that he saw Pack on the floor right after the killing and his feet were three feet from the door. Other witnesses testified Pack's pistol was in the holster on his body and had not been drawn. Pack had three bullet holes in his fore-

arm, one near his navel, two in his left knee, and there was a cut on his forehead made by a blow. The glass was shot out of the kitchen door and the frame of the door had a bullet hole in it and there was a bullet hole in the floor inside the restaurant ten feet two inches from the door.

Thus it is seen that there is a direct conflict in the testimony as to the actual shooting. If the evidence for the defense is to be believed, Maddy shot Pack as the latter stood in the door reaching for his gun, hence he acted in self-defense. If the Commonwealth's evidence is to be believed, Pack was in the restaurant dining room, seven or eight feet from the door, which was closed, had his hands at his side and Maddy fired through the door; that after Pack fell Maddy opened the door, emptied his pistol into his prostrate form and then struck him on the head with the pistol. The glass being shot out of the door, the bullet hole in the panel of the door and the bullet hole in the floor corroborated the Commonwealth's witnesses. All of which dispel the thought that the defendant shot in self-defense. While Maddy was on the stand a juror asked him if it would be possible to pull the door open, showing that he did not understand, or else he questioned, Maddy's statement that Pack caught hold of the door with his left hand and went for his gun with his right, since the door had no handle.

Appellant relies upon Carpenter v. Com., 287 Ky. 819, 155 S. W. 2d 240; Gill v. Com., 235 Ky. 351, 31 S. W. 2d 608 and Prince v. Com., 303 Ky. 15, 196 S. W. 2d 872, as entitling him to a directed verdict. A reading of these cases shows they have no application here. The Carpenter opinion recites there was no material contradiction in the evidence. Likewise, in the Gill case the opinion says there is no contradiction in the material evidence and the facts show the homicide was justifiable. The Prince case is to the effect that one claiming self-defense must satisfy the jury that the killing was excusable on that ground; that neither the court nor the jury is required to accept defendant's explanation of the homicide in the absence of eyewitnesses, but that if the physical facts in evidence corroborate the evidence of the defendant and the proven circumstances are more consistent with his innocence than his guilt, the court should direct a verdict in his favor.

In the instant case, appellant's evidence as to the facts and circumstances surrounding the shooting were directly contradicted by the evidence of the Commonwealth. Furthermore, the bullet holes in the door and floor tend to corroborate the Commonwealth's witnesses and to contradict defendant and his witnesses. This conflict in the evidence made this case peculiarly one for the jury who passes on the credibility of the witnesses and the weight to be given their testimony. Hicks v. Com., 291 Ky. 481, 165 S. W. 2d 1; Taylor v. Com., 301 Ky. 109, 190 S. W. 2d 1003.

We might say in passing that appellant must have been sorely tried by Pack's overbearing conduct as well as alarmed by his threats, and had we been sitting on the jury our conclusions might have been different from the verdict returned. But the jury and not this court weigh the evidence and if there is sufficient evidence to sustain the verdict, we will not reverse it, as by so doing we would be usurping the power of the jury. Blaylock v. Com., 239 Ky. 793, 40 S. W. 2d 382.

The judgment is affirmed.