Case 111.—PROSECUTION AGAINST GREEN, WATKINS & OTHERS FOR MURDER.—Nov. 23.

## Watkins v. Commonwealth.

Appeal from Breathitt Circuit Court.

ROBERT RIDDLE, Circuit Judge.

Defendant convicted and appeals. Reversed.

1. Criminal Law—Appeal—Transfer of Case—Filing of Transcript —Delay—Time of Objecting—Where a motion to dismiss an appeal from a conviction of a felony on the ground that the transcript was not lodged with the clerk of the Court of Appeals within 60 days after judgment, as required by Cr. Code Prac., sec. 336, sub-sec. 3. is not made until after the case is submitted for argument the irregularity is waived.

2. Homicide—Aiders and Abettors—Action in Concert—Feuds— Defendant, being at the home of his relatives, learned that another party with whom they were at enmity was assembled at a neighbor's house looking for a fight. One of defendant's relatives went to the neighbor and agreed that defendant and his party (consisting of four, one of whom was unarmed) should go home by an unusual route so as to avoid going by the neighbor's and bringing on a conflict. The other party (consisting of seven), having violated this agreement, met defendant's party on the unaccustomed route, and, in a fight which immediately followed, one of such seven was killed. Held, that it was immaterial whether defendant or one of his companions fired the fatal shot, since what would justify one would justify all, and each was an aider and abettor of the others, if the killing was unjustifiable.

3. Same—Self-Defense—Apparent Danger—Defendant was entitled to an acquittal if there was reasonable ground to apprehend danger necessitating the shooting as well as if there was actually such danger.

4. Same—Instructions—Conspiracy—Such a state of facts did not warrant an instruction on conspiracy.

5. Same—Self-Defense—If the killing was not necessary and did not reasonably appear necessary to protect defendant or members of his party from death or great bodily harm, defendant was guilty.

6. Same—Murder or Voluntary Homicide—If the killing by defendant, or his aiding or abetting of the killing by another, was

done without malice, unlawfully and willfully in a sudden affray, or in sudden heat of passion upon provocation reasonably calculated to excite defendant's passion beyond his power of control, it was voluntary manslaughter; if with malice, it was murder.

7. Same—Self-Defense—If defendant or any of his party commenced the fight by first shooting or first making demonstrations to shoot, or if both parties were determined on a conflict and fought by mutual consent, the killing was not excusable on the ground of self-defense.

8. Same—Reasonable Doubt as to Degree—Where one accused of homicide is guilty, but there is a reasonable doubt as to whether he is guilty of murder or voluntary manslaughter, he should be convicted of the lesser offense only.

9. Criminal Law—Reasonable Doubt—One accused of murder is presumed to be innocent, and this presumption entitles him to acquittal unless his guilt has been proved beyond a reasonable doubt.

N. B. HAYS and C. H. MORRIS for appellee.
(No brief for appellee.)

GOURLEY & REDWINE and COPE & SON for appellant.

POINTS AND AUTHORITIES.

1. The appellant insists that the instructions given by the court are erroneous and prejudicial to his rights and misleading upon the trial of the cause. (Maiden v. Commonwealth, 82 Ky., 133; Riley v. Commonwealth, 94 Ky., 266; Martin v. Commonwealth, 93 Ky., 192; McDowell v. Commonwealth, 4 Ky. R., 353; Allen v. Commonwealth, 9 Ky. Law Rep., 785; Radford v. Commonwealth, 9 Ky. Law Rep., 379; Oakley v. Commonwealth, 10 Ky. Law Rep., 585; Hamlin v. Commonwealth, 11 Ky. Law Rep., 348; Smith v. Commonwealth, 13 Ky. Law Rep., 31; Commonwealth v. Barnes, 13 Ky. Law Rep., 163; Martin v. Commonwealth, 14 Ky. Law Rep., 95; Nantz v. Commonwealth, 14 Ky. Law Rep., 593; Hammerly v. Commonwealth, 15 Ky. Law Rep., 286).

2. The declaration or acts of a co-defendant are not competent until a conspiracy has been established, nor can instruction be given on conspiracy, unless a conspiracy has been established. (Stovall v. Commonwealth, 23 Ky. Law Rep., 103; Strange v. Commonwealth, 23 Ky. Law Rep., 1234; Hines v. Commonwealth, 23 Ky. Law Rep., 119).

3. Instruction No. 3, which authorized the jury to find the defendant guilty if he aided, abetted, advised or encouraged

Watkins v. Commonwealth.

the killing was erroneous in that it failed to require the jury to believe that said "killing was induced thereby;" these words should have been added. (Hall v. Commonwealth, 93 S. W., 904).

4.   Under the state of facts the court should have told the jury that if defendants or any of them were in immediate danger of death or great bodily harm at the hands of deceased "or those acting with him," they should find the defendant not guilty.

5.   Where it is a question under the evidence which fired the first shot, deceased or defendant, then the ordinary self-defense instruction is proper and no modification should be added. (Kendall v. Commonwealth, 14 Ky. Law Rep., 15, 19 S. W., 173; Commonwealth v. Bullock, 24 Ky. Law Rep., 79, 67 S. W., 902; Carroll v. State, 24 Ala., 36; State v. Patterson, 12 Am. Rep., 210; Rafferty v. People, 18 Am. Rep., 601; Nobs v. State, 62 Am. Dec., 711; Neely v. Commonwealth, 93 S. W., 904; Calhoun v. Commonwealth, 23 Ky. Law Rep., 1188; Scott v. Commonwealth, 16 Ky. Law Rep., 702).

OPINION BY JUDGE SETTLE—Reversing.

The appellant, Green Watkins, his brother, Clay Watkins, and cousin, Elliott Collins, were jointly indicted in the Breathitt circuit court for the murder of Lee Manns. Appellant was accorded a separate trial, and the jury by the verdict returned found him guilty of voluntary man-slaughter, and fixed his punishment at confinement in the penitentiary 10 years. By this appeal he seeks the reversal of the judgment of conviction.

We are asked by counsel for the Commonwealth to dismiss the appeal upon the ground that the transcript of the record was not lodged in the office of the clerk of this court within 60 days after the judgment, as required by subsec. 3, § 336, Cr. Code Prac. We deem it unnecessary to decide whether or not the transcript was filed within the time fixed by the Code, as the motion to dismiss the appeal was made after the case was submitted for argument. In passing upon a similar motion based upon the same ground, this court, in Mackey v. Com'lth, 80 Ky. 345, 4 Ky. Law

Rep. 179 held that in a felony case not only are there no conditions annexed to the granting of an appeal, but that the defendant is entitled to it as a matter of right, and if he fail to lodge in the office of the clerk of this court the transcript within 60 days, the court may, upon his motion made before the expiration of the 60 days, extend the time of filing it. After thus holding, the opinion proceeds to say: "Hence we do not regard the question presented on the motion under consideration as involving the jurisdiction of this court. It is purely a question of practice; and we are constrained to hold that, after the cause is submitted for argument or hearing on the merits, all preliminary questions involving irregularities, which do not reach the substance of the controversy, or affect the jurisdiction of the court, should be treated as waived. The motion to dismiss is therefore overruled."

The appellant's principal ground for a reversal is that the trial judge erred in instructing the jury. A correct understanding of the salient facts leading to, and connected with the homicide will throw much light upon the consideration of this contention. Appellant and the deceased were near neighbors, and attendants at the same school, each being about 16 years of age. Bad blood had existed between them for some time, and on the day of the homicide appellant, after dismissal of the school, went to the residence of his mother on Quicksand creek; here he found a younger brother, Clay Watkins, and their kinsman, Elliott Collins, who is about appellant's age. Sam Watkins, an older brother, soon thereafter arrived at his mother's, and informed appellant and his companions that deceased, his younger brother, Ashland Morris, George Howard, Gitteau Howard, Branch Howard, Bob Howard, and Alfred Miller were at the home of Riley Howard, an uncle of the Howard boys,

armed and awaiting an opportunity to attack them.
As a means of avoiding a meeting of the parties ap-
pellant and his two companions agreed to go to the
house of Sam Watkins and spend the night, and in-
stead of going the usual road by the house of Riley
Howard, that they would cross the creek at their
mother's and make their way to Sam Watkins' from
the opposite side of the creek.  Before starting, how-
ever, they further agreed that Sam Watkins might
go to Riley Howard's, inform him of the plan to pre-
vent a meeting between the belligerent factions, and
arrange for the latter to keep the party at his house
from leaving until appellant, his brother Clay, and
Collins reached Sam Watkins' house.  Sam Watkins
went at once to see Riley Howard, informed him of
the arrangement, and obtained his consent to carry
it out.  Howard communicated the matter to his neph-
ews and the Manns, and advised Sam Watkins that
they would accept the arrangement.  The latter then
returned to his mother's, and informed his brothers
and Collins of what Riley Howard had said, and they
immediately started with Sam on the way to his
home, crossing the creek as agreed, for that purpose.
When they left their mother's, appellant was armed
with a pistol; Clay Watkins and Collins had each a
gun; Sam Watkins was unarmed.  As the party were
pursuing their way down the creek, the Manns, How-
ards and Miller, also armed with pistols and guns, in
violation of the agreement mentioned, left Riley How-
ard's and crossed the creek to the side on which the
Watkins party had gone; very soon they met on the
banks of the creek, and then occurred the rencounter
in which Lee Manns lost his life.  Relatively, the bel-
ligerants stood three to seven, for it does not satisfac-
torily appear that Sam Watkins took any part in the
shooting which followed.  The proof was conflicting
as to how the shooting began.  The Manns party

testified on the trial that it followed an insulting re-
mark addressed to them by appellant, and that he
fired the first shot.   Upon the other hand, this was
denied by appellant, his brothers, and Collins, their
testimony being to the effect that the insulting re-
mark was made by deceased, and that he and hisparty
began the shooting.   At any rate, the shooting imme-
diately became general, and was engaged in by all
who were armed, though but the one person was
killed. The fight ended in the flight of the Watkinses,
the weaker party.   While, as stated, the evidence was
conflicting as to the manner in which the fighting be-
gan, there were several circumstances that apparently
corroborated Watkins' version of the matter.   As
they readily consented to leave the neighborhood of
their foes and go to their brother's to avoid meeting
with them, and left the usual road to travel an un-
usual route on the opposite side of the creek, to further
prevent such a meeting, it is hardly reasonable that
they would have been willing to force a fight,
unexpectedly meeting the enemies from whom they
were attempting to escape.   Furthermore, it also ap-
pears unreasonable that in such a meeting they should
have hastened to attack a party who outnumbered
them more than two to one, and were better armed.
and nearly all of whom were adults of full size and
mature physical strength.   However, these circum-
stances, with all other evidence in the case, were
doubtless presented to the jury, whether given any
weight by them or not, and it is not our right to in-
vade their province by .declaring what verdict they
should or should not have returned upon the facts
before them.

There was also a contrariety of evidence as to
the identity of the slayer of Lee Manns.   That he
was shot by appellant, his brother, or Collins, is
evident, but it is not clear who did it.   This, however,

is not material, as they were acting in concert, and all of them did some shooting. If appellant and his associates were at the time properly acting in their self defense, what would have excused one would have excused all of them. On the other hand, if the killing of the deceased was not justifiable, those who shot at him or his party without hitting him are, as aiders and abettors of the person by whom the killing was done, equally responsible with him. In view of the facts appearing in the record, we think the instructions given by the court did not correctly present the law of the case. The instructions are too numerous and lengthy to copy in the opinion. It is sufficient to say that they all contain errors, and one in particular, that makes them radically wrong. That is, they limit appellant's right to defend himself or his associates to only such danger, real or apparent, to life or person as he or they were in at the hand of deceased; whereas, he was equally entitled to have the jury instructed as to the grounds upon which he could defend himself and his associates against such danger, real or apparent, as he had reasonable grounds to apprehend to himself or them at the hands of those acting with deceased.

Instruction No. 6, as to the question of conspiracy, should have not been given. There was no evidence of a conspiracy on the part of appellant and his associates upon which to base such an instruction. The instruction was therefore misleading and necessarily prejudicial to appellant. In lieu of the instruction contained in the record, the court, upon a retrial of the case, should give the following:

"(1) If the jury believe from the evidence beyond a reasonable doubt that the defendant, Green Watkins, in Breathitt county, Ky., and before the finding of the indictment, did kill Lee Manns by

shooting him with a pistol, loaded with leaden ball, or other hard substance, when it was not necessary, and it did not reasonably appear to defendant to be necessary to protect himself, Clay Watkins, Sam Watkins, or Elliott Collins from danger, real or apparent, or death or great bodily harm at the hands of Lee Manns, or those, if any, acting in concert with and aiding him, they should find defendant guilty—that is, guilty of murder—if they believe from the evidence beyond a reasonable doubt that said killing was done unlawfully, willfully, feloniously, and with malice aforethought; but guilty of voluntary manslaughter if the jury believe from the evidence such killing was without previous malice, and should further believe from the evidence beyond a reasonable doubt that it was unlawfully, willfully and feloniously done in a sudden affray, or in a sudden heat and passion, upon provocation which was reasonably · calculated to excite defendant's passion beyond the power of control. If the jury find the defendant guilty of murder, they will fix his punishement at death or confinement in the penitentiary for life. But if they find him guilty of voluntary manslaughter, they should fix his punishment at confinement in the penitentiary not less than two nor more than twenty-one years, in their discretion.

"(2)   If the jury believe from the evidence beyond a reasonable doubt that Lee Manns was unlawfully, willfully, feloniously, and with malice aforethought, or in a sudden affray, or sudden heat and passion, shot and killed by Clay Watkins, Sam Watkins, or Elliott Collins, when it was not neccessary, and did not reasonably appear to the one doing the killing to be necessary, to protect himself, Green Watkins, or the other persons associated with him at the time, from danger, real or apparent, of death or great bodily harm at the hands of Lee Manns, or those act-

ing in concert with him, and shall further believe from the evidence beyond a reasonable doubt that the defendant, Green Watkins, was present at the time, and did unlawfully, willfully, and feloniously aid, abet, advise, counsel, or encourage the said Clay Watkins, Sam Watkins, or Elliott Collins, or the one of them who did said killing, they should find the defendant, Green Watkins, guilty—that is, guilty of murder—if they believe from the evidence beyond a reasonable doubt that said aiding, abetting, advising, consulting, or encouraging, if he did same, was done with malice aforethought, but guilty of voluntary manslaughter if they believe from the evidence such aiding, abetting, advising, consulting or encouraging, if any was done, without previous malice, and shall further believe from the evidence beyond a reasonable doubt that it was done in a suden affray, or in sudden heat and passion, upon provocation which was reasonably calculated to excite his passion beyond the power of control.

"(3) If the jury believe from the evidence beyond a reasonable doubt that the defendant, Green Watkins, has been proved guilty of murder or voluntary manslaughter, but have from the evidence a reasonable doubt as to which of said crimes, if either, he is guilty of, they should, in that event, find him guilty of voluntary manslaughter.

"(4) Although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant, Green Watkins, shot and killed Lee Manns, if they believe from the evidence, that, when he did so, he had reasonable grounds to believe, that deceased, or others of his party acting in concert with him, were then about to inflict upon defendant, Clay Watkins, Sam Watkins, Elliott Collins, or any of them, death or great bodily harm, or it reasonably appeared to him that such was the case, and it further reason-

ably appeared to him that the only reasonably safe means of protecting himself, or them, against such danger, real or apparent, was to shoot the said Lee Manns, or others of his party acting in concert with him, and the shooting and killing of the former was done under these circumstances, the same was excusable on the ground of apparent necessity in the defense of himself or associates named, and the jury should acquit the defendant.

"(5) But if the jury believe from the evidence, beyond a reasonable doubt, that the defendant, Green Watkins, Clay Watkins, Sam Watkins, or Elliott Collins, or any of them, when they met Lee Manns and his party commenced the difficulty with them by first shooting at them, or any of them, or making the first demonstration to shoot at any of them, or that defendant, Clay Watkins, Sam Watkins, and Elliott Collins met the parties named, and both parties were armed and determined on a conflict, and did engage in such conflict by mutual consent then in either event the defendant, Green Watkins, cannot rely on the right of self-defense, or that he acted in defense of his associates named.

"(6) The jury are further instructed that the defendant is presumed to be innocent, and this presumption of his innocence entitles him to an acquittal at their hands, unless his guilt has been proved from the evidence beyond a reasonable doubt."

There are other errors complained of, but as there must be a retrial of the case, we assume that they will not be repeated.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial consistent with the opinion.