## Moore et al. v. Commonwealth.

(Decided Dec. 11, 1936.)

WILLIAM LEWIS & SON for appellants.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming in part and reversing in part.

Appellants were indicted by the grand jury of Rockcastle county on January 15, 1936, the indictment containing two counts. The first count charged appellants with murder, committed by shooting and killing Delmus Mink. In the second count Rollie was accused of doing the shooting and his father of aiding and abetting.

Upon a joint trial the jury returned a verdict of guilty, fixing the punishment of each at fifteen years' confinement in the penitentiary. Motion for a new trial was overruled, judgment entered upon the verdict, from which this joint appeal is prosecuted.

The homicide occurred on November 25, 1935, in Rockcastle county at Bingham's Service Station, then operated by Mr. and Mrs. Marcum, and in connection with which they conducted a restaurant and soft drink stand. By the testimony for the Commonwealth it is shown that Delmus Mink was in the resaurant about 11:30 p. m., apparently sober. He was sitting at a table waiting to be served a sandwich. Willie Moore, a brother of Leander, was also in or about the restaurant. When the appellants came in, one or both of them went into the kitchen and started an argument with a girl who was working for the Marcums. One witness said:

"Rollie did not seem to be drunk, but Leander and Willie were, and were drinking and cussing." Mr. and Mrs. Marcum had gone to bed, but were aroused by the servant and came back into the kitchen and asked the Moores to get out. It appears that they left the kitchen and went into the restaurant, where they "raised a racket" with some boys who were playing musical instruments. The boys wanted to leave. The witness said: "Willie cussed them and told them they came there with them and they were not going to leave till they did."

Afterwards Willie and Leander got into a quarrel and Willie told Leander that he would shoot him if he was his brother. Willie had a pistol and Leander a knife. Leander went over, "tried to raise a racket" with the Doan boys, who said they were not looking for trouble. Rollie came up and said, "Let me get in this." About this time Mink said, "Don't jump on them boys," and Leander replied, "What in the hell have you got to do with it?" Mink told Leander he did not want to fight and Leander started to hit him. Mrs. Marcum took hold of Leander and held him back, and told them to get out. Leander started out, Mink still insisting that he did not want to fight. Leander grabbed Mink by the arm and pulled him out the door, and as they got out he hit Mink, and several blows were passed between them. Nantz a witness, had Rollie by the arm, still in the restaurant, and Rollie said to him: "Turn me loose, damn you, or I'll kill you." Witness turned him loose, and he hurried out with his pistol in hand, and going to where Mink and Leander were passing blows, shot four or five times. Mink fell to his knees, then got up and went into the restaurant, from whence he was taken to a hospital where he died the following morning.

Testimony for the defense was to the effect that there was more or less general disturbance in the restaurant, others than the Moores being the aggressors, and that the real difficulty started when Mink pushed Leander out the door. After they got outside, Mink hit him with something and knocked him against the wall; knocked him down a second time and he "fell over a bank"; and about this time Rollie came out and "was going to where Leander was and Mink threw his gun down on Leander, who had his hands up, and Rollie says, 'don't do that,' and Mink turned halfway round; threw his gun down on Rollie and fired at Rollie, and

Rollie shot Mink." Leander Moore says that Mink hit him with a pistol and was pointing it at him when Rollie came up and said, "Don't do that," and Mink whirled and fired at Rollie. The testimony is to the effect that five or six shots were fired. Mink was shot four or five times.

A more complete recital of the extremely conflicting testimony is not deemed necessary, since any contrariety in the proof is not for the consideration of this court, but for the jury. It is not argued here that the verdict of the jury was not supported by the evidence. Four grounds are urged for reversal.

1. It is argued that the orders of the court do not show the presence of appellants in court during the progress of the trial. Counsel in his argument points to the clerk's trial orders as contained in the transcript, which fail to show that appellants were present during the trial. For instance, in the first order it is said: "This prosecution came on for hearing and both sides announced ready, whereupon selection of a jury was begun." Another order shows that some jurors were "tentatively accepted," and a new venire ordered, and so on through the trial.

Counsel cites section 183 of the Criminal Code of Practice, and the cases of Meece v. Com., 78 Ky. 586; Rutherford v. Com., 76 Ky. (13 Bush) 608; Yarbrough v. Com., 89 Ky. 151, 12 S. W. 143, 11 Ky. Law Rep. 351, 25 Am. St. Rep. 524, and argues that because the orders of the clerk do not affirmatively show the presence of appellants at the time of these procedures, the defendants were not present, hence prejudicial error was committed. The cases cited afford appellant no relief. We are of opinion that before the alleged errors of omission could work to the disadvantage of appellants, it would be incumbent upon them to show affirmatively that they were not present during the trial or some part thereof, or if actually absent that such absence was not voluntary. No such showing is made.

It is true section 183 provides that the accused must be present during a trial of a felony charge. However, in Boreing v. Beard et al., 226 Ky. 47, 10 S. W. (2d) 447, the question of the effect of the absence of the accused during trial was considered very thoroughly, and reviewing former decisions on the subject, we held that

the accused may waive his right to be present, and further held that such right is waived by the failure of the accused to make such alleged absence a ground for new trial, which was not done here.

2. The next ground challenged what is called "erroneous admission of evidence." It arose as follows: Mrs. Mink, mother of deceased, was called to the hospital to see her son. Just about two hours before he died he said to her: "I am just about gone." Immediately after that he said: "I wasn't doing anything, they just jumped on me." Objection was made to this testimony and overruled. Later, however, the court reconsidered the matter and called Mrs. Mink back to the stand, and she repeated the statements, and the court ruled that the testimony did not measure up in competency as an admissible dying statement. In a proper admonitory instruction the court then told the jury that none of Mrs. Mink's evidence, with relation to statements thus made by her son, were to be considered for any purpose.

There is little doubt that the statement of the witness as to his belief that he was "about gone," taken together with the fact that he was shot four or five times, once through the body, and died a few hours after the statement, was a sufficient qualification, and would have supported a proper statement as to what had occurred. Postell v. Com., 174 Ky. 272, 273, 192 S. W. 39. However, the question as to the admissibility of the statement as to what occurred is one which we need not decide, it being sufficient to say that the court very cautiously gave the defendant the benefit of a doubt, and admonished the jury not to consider the testimony for any purpose, hence there was no prejudicial error.

Appellants complain that the indictment is faulty; indeed, they take the position that it is void. The first count reads in part:

"Rockcastle circuit court: The grand jury of Rockcastle County accuse Leander Moore and Rollie Moore of the crime of murder * * *."

In the second count it reads:

"The grand jury of Rockcastle County *in the name and by the authority of the Commonwealth of Kentucky,* accuse * * *."

It will be noted that the italicized words in the second count are omitted from the first count, and it is argued that the indictment by reason of the omission is void as to both defendants, but if held good as to Leander, who is charged as accessory before the fact, it is still void as to Rollie, who is charged in the first count with the actual homicide.

The objection now raised here was not included in the grounds presented in support of motion for a new trial. In this state of case we can only determine whether or not the indictment states a public offense. Johnson v. Com., 240 Ky. 337, 42 S. W. (2d) 341. In that case we held that an objection to an indictment, which failed to name the county in which the offense was committed, could not be urged here originally. Where an indictment defectively states a public offense, it must be demurred to on trial for any technical insufficiency. There was no demurrer here. It is only when an indictment fails to charge the commission of an offense known to the law, that the question of its sufficiency may be raised on appeal, notwithstanding no demurrer was filed in the trial court. Maggard v. Com., 257 Ky. 414, 78 S. W. (2d) 315.

The indictment clearly charged a public offense; the technical defect was not brought to the court's attention by demurrer nor on motion for a new trial; hence we are of the opinion that no prejudicial error in this respect occurred on the trial.

Counsel complains of instructions Nos. 1 and 2, but complaint with relation to No. 1 need not be discussed, because penalty was inflicted under instruction No. 2. It is noted from appellant's brief that the second instruction is not subject to criticism insofar as it relates to Rollie, and on this point we fully agree.

In the second instruction the jury was told that if they should believe from the evidence beyond a reasonable doubt that the defendant Rollie Moore "did unlawfully, wilfully and feloniously," but without previous malice, shoot and kill Mink, they should find him guilty and fix his punishment at confinement from two to twenty years. The jury was further told that if they should believe from the evidence, beyond a reasonable doubt, "that the defendant Leander Moore was then and there present and near enough so to do, and did aid,

abet, advise, encourage, counsel or command the said Rollie Moore to shoot and kill the said Mink, not in his necessary self-defense, * * *'' they should find Leander guilty, fixing his punishment within proper limits.

It is argued that before Leander could be convicted as an abettor, he must have acted willfully, feloniously, and maliciously. Under section 1128, Ky. Stats., accessories before the fact are liable to the same punishment as are principals. Sumner v. Com., 256 Ky. 139, 75 S. W. (2d) 790, and cases cited. This being true, the question of guilt or innocence must be submitted to the jury, without favor to the one or to the prejudice of the other.

As far back as Mickey v. Com., 9 Bush, 593, 595, it was held that an instruction somewhat similar to the one here was fatally defective. That instruction was in the following language:

"If the jury believe from the evidence, to the exclusion of a reasonable doubt, that either John Looney or Dan Smith did the killing as charged in the indictment, and that Ben Mickey was present, or near enough to give assistance, and aided or abetted or assisted or incited or advised or encouraged the person doing the killing, they should find him [Mickey] guilty as charged in the indictment."

In the above instruction the words "willfully, maliciously and feloniously" are omitted. In their stead the words used with relation to the act of Smith or Looney (ostensibly principals) are, "did the killing as charged in the indictment," which no doubt charged an unlawful and felonious act. In holding the instruction defective the court said:

"It is to be observed that the guilt of appellant is not made to depend upon whether or not he maliciously aided, assisted, or encouraged the party or parties who did the killing; nor does the instruction in unmistakable terms convey the idea that to convict Mickey of murder it was necessary that the commonwealth should show that the party or parties committing the homicide were actuated by malicious motives."

We have found no case since the Mickey Case which overruled it. A reading of Watkins v. Com., 123 Ky. 817, 97 S. W. 740, 29 Ky. Law Rep. 1273, does not

show the alleged errors in the instructions, but it is said, "they all contain errors." Upon an inspection of that record, we find that one alleged error was the same as appears here. This court went to some pains in writing out instructions, one of which specifically set out the law relating to the guilt or innocence of an abettor, both as to murder and manslaughter, and in which the words omitted from the instruction here under observation were included. This instruction is contained in Hobson on Instructions, sec. 814, and it is there noted that it was prepared by this court.

The instruction as given by the court in the Watkins Case, supra, has been fully approved and rewritten in Steeley v. Com., 129 Ky. 524, 112 S. W. 655. It was also rewritten in Hatfield v. Com., 55 S. W. 679, 21 Ky. Law Rep. 1461 and approved in Chadwell v. Com., 69 S. W. 1082, 24 Ky. Law Rep. 818; Gambrell v. Com., 130 Ky. 513, 113 S. W. 476, and as late as Barney v. Com., 258 Ky. 432, 80 S. W. (2d) 513, and Lee v. Com., 262 Ky. 15, 89 S. W. (2d) 316.

From a reading of the cases above enumerated, it may not appear that in all of them this identical defect was present; however, the court cannot help but be impressed with the striking regularity with which the Watkins' instruction has been approved by this court.

In Fuson v. Com., 199 Ky. 804, 251 S. W. 995, 997, we wrote:

"If one commits a crime and another is actually present aiding, abetting, assisting, or encouraging its commission, the latter thereby becomes a participant, a principal in the second degree, and his culpability is determined by his motives, and not by the degree of his influence over the former."

In Wharton on Criminal Law (12th Ed.) vol. 1, sec. 270, in speaking of accessories before the fact, it is said:

"The assistance must be rendered knowingly. It is not necessary, indeed, that the principal should know all the conditions of help rendered to him, but it is necessary for the accessory to know the guilty purpose he contributes to help."

In Centers v. Com., 254 Ky. 733, 72 S. W. (2d) 423, 425, we condemned a manslaughter instruction which

omitted the words which are omitted here, but there used in relation to the principal. The opinion contains this language:

> "Since the judgment must be reversed because of error in the instruction on aiding and abetting, we are saved the necessity of determining whether properly defining 'voluntary manslaughter' in instruction No. 7 operated to cure the defect in instruction No. 2."

When we look to the record in the Centers' case, we find the instruction there complained of lacking in the use of the words here omitted, and in commenting on this instruction we said:

> "To warrant a conviction of appellant as aider and abettor for murder, it must first be made to appear that some one or more of his codefendants killed deceased in circumstances that would constitute murder and that appellant was present and in like manner aiding and abetting in the homicide; and to authorize a conviction as aider and abettor for manslaughter it should be made to appear that the homicide was committed by some of the other defendants in circumstances that would constitute manslaughter and that appellant was present and in like manner aiding and abetting in the act."

We find only one case in which an instruction, bearing the same omission as the one here, has been upheld by this court, and that is Anderson v. Com., 193 Ky. 663, 237 S. W. 45, 46. In that case the jury was instructed to find Anderson guilty of the offense charged, if they believed beyond a reasonable doubt that the whisky was taken by another "feloniously and with force," and that Anderson was present, aiding the principal in *so taking* the whisky. In holding the instruction sufficient the court said:

> "The expression 'in so taking said whisky' relates to the manner in which Goodwin, Cranor, and Aldridge took the whisky, and, if that was done 'feloniously and by force,' Anderson was equally guilty with them."

The instruction here is distinguishable for the reason that in this instruction there was no use of the words "in so killing" with reference to Leander Moore's

part in the homicide. In addition in the Anderson Case we said:

> "While we cannot give our full approval to this manner of instructing a jury upon the law relating to aiders and abettors, we are constrained to the opinion that appellant, Anderson, was not prejudiced in the slightest by the foregoing instruction."

In Baskett v. Com., 44 S. W. 970, 19 Ky. Law Rep. 1995, an instruction on aiding and abetting was criticized, but held to be correct. However, in holding it so, the court referred to Mickey v. Commonwealth, supra, and said:

> "In the Mickey Case * * * the instruction [was] disapproved because the guilt of appellant was not made to depend upon whether or not defendant maliciously aided or assisted or encouraged the parties who did the killing."

In True v. Com., 90 Ky. 651, 14 S. W. 684, 685, 12 Ky. Law Rep. 594, this court disapproved of an aiding instruction which told the jury that the defendant should be found guilty if "he approved of or consented to" the murder, instead of making his guilt depend upon his presence aiding, encouraging or abetting. In doing so the court used the following language:

> "The words 'aprove of' and 'consent to' do not, singly or combined, express the idea of [a willful] contribution to or procurement of a felonious act [which is necessary to constitute guilt]; for a person may be present, and heartily approve of an act after it is done, without being at all willing to or capable of aiding, advising, or procuring it done, especially if it be felonious. Or he may consent, in the sense of offering no resistance to commission of it, without the slightest contribution to it by his own will."

From what we have above pointed out, it is our opinion that the omission of the words complained of from instruction No. 2 constituted error prejudicial to the rights of Leander Moore.

In closing let us repeat what has been said in many cases in respect to aiding and abetting instructions under similar facts and circumstances, that the trial court can do no better than to adopt as a model the in-

struction .aid down in Hobson on Instructions, sec. 814, which was prepared, and in numerous cases approved, by this court.

It is the opinion of the court that the judgment as to Rollie Moore should be and is affirmed. The judgment as to Leander Moore is reversed, with directions to grant him a new trial consistent with this opinion.