# Davis v. Commonwealth.

April 25, 1939.

As Modified on Denial of Rehearing June 20, 1939.

S. M. Ward, Judge.

128

D. G. Boleyn and W. O. Miller for appellant.

Hubert Meredith, Attorney General, and J. M. Campbell, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, Jack Davis, alias Berry Brewer, has been sentenced to death for the murder of Abram Combs

Whatever weakness there may have been in the chain of circumstances and obscurity in the case as developed by the Commonwealth, they were strengthened and cleared by the testimony of the defendant. It was that in Breathitt County, where they lived, he, Ben King and Walter Riley had conspired to kidnap and tie up a certain man who boarded with King's sister, obtain a check for $1,500 from him, cash it and escape. King and Riley were under indictment for some felony in Breathitt County. An automobile was required to accomplish this purpose, and Davis proposed that he would get Combs, who lived in Hazard, to take him over on McIntosh Creek, in the edge of Leslie County, where some of his wife's people lived, and there the three men would tie up Combs and take his automobile. Pursuant to that plan, on the night of July 8, 1938, Davis got Combs to take him there where King and Riley met them. They took Combs off the side of a dirt road and Davis grabbed him first. Without any understanding, prearrangement or purpose to hurt him, according to Davis, King struck Combs on the head with a large iron bolt. The only physical hurt the defendant did Combs, he related, was to strike him with his fist when he swung around and grabbed him around the leg. He got the automobile key from Combs' pocket and left the scene to go get his wife at her sister's home near by, leaving the other two men with the victim. He dropped the key while trying to put it in the ignition lock and this required him to go up the mountain to Jim Wooton's place to get a flashlight with which to find the key. But he first called for some whiskey. He borrowed the flashlight, found the key and went for his wife. Near by he picked up the two men and headed towards Versailles where his brother-in-law

lived. He testified that he knew nothing about what had happened to Combs after he had left the two men with him, and says that King reported that he had not killed Combs but had tied him up in the bushes.

Fortuitous circumstances at Winchester precipitated the disclosure of the crime. Having information that an air hose had been stolen from a garage at Stanton, the Winchester officers were on the lookout, and seeing what seemed to be the end of such a hose hanging out the back of an automobile the officers undertook to stop it for investigation. This was Combs' car in which Davis and wife were riding. In the pursuit Davis had a puncture and when driven into the curb he jumped out and ran. The article proved not to be the air hose, but the wife was taken into custody and it was soon learned that the automobile belonged to Combs. Investigation as to his whereabouts led to the discovery of his body and the murder. His neck was broken and he had been terribly beaten in the head with some heavy instrument. Near by was found an iron bolt about 18 inches long and portions of a brown paper sack. Davis was afterward arrested and made a confession as to his participation in the crime, but not to the extent that he disclosed on the trial.

The indictment accused the appellant, Davis, King, Riley, and the appellant's wife and her father with murder committed: (1) Pursuant to a conspiracy to kill Combs; (2) by Davis with the others aiding and abetting him; and (3) by each of the others, specifically, with Davis, and his co-defendants as aiders and abettors, respectively. The instructions conformed to the charges as set forth in the indictment. The argument is made in behalf of the appellant that it was error to authorize a conviction pursuant to a conspiracy to kill Combs since the evidence disclosed only a conspiracy to rob him. The evidence was not so closely confined. Davis did testify that it had been agreed that the party would hurt nobody and they intended only to take Combs' automobile. He testified that while they were sitting around the railroad at Hazard, apparently working out the details of their plan, he picked up the large bolt, found at the scene of the murder, and pitched it over in the road to Riley, saying: "Here Walter." Riley picked it up saying: "I will take that; I might want to knock a nigger in the head." He rolled it up in a piece of brown paper and "they" laid it behind

a rock. Nothing was said about taking this bolt on the expedition and he did not see it any more. That night after the murder he asked King what he had hit Combs with and he told him it was "that bolt you throwed up in the road." But a number of witnesses testified that they had seen the appellant Davis with something about eighteen inches or two feet long wrapped up in brown paper at different times during the day before the homicide. He had stated to the officers upon his arrest that it had been agreed by his associates and himself to kill Combs, and also that after Riley struck the first blow he and King ran and he, Davis, had beat the victim to death. Moreover, his presence with the other men and his proved connection with the killing afforded abundant evidence and inference upon which to submit the question of murder committed pursuant to a conspiracy to murder: Sebree v. Commonwealth, 260 Ky. 526, 86 S. W. (2d) 282. Beyond that response to the argument is the rule in this jurisdiction that if the evidence tends to prove that a crime was committed pursuant to a concert of action or conspiracy, where two or more persons are charged therewith, the court may submit the case under a conspiracy instruction even though that is not charged in the indictment as a means by which the crime was committed or consummated. Ray v. Commonwealth, 230 Ky. 656, 20 S. W. (2d) 484, 66 A. L. R. 1297. Cf. Tincher v. Commonwealth, 253 Ky. 623, 69 S. W. (2d) 750.

The undertaker who prepared the body for burial described the wounds and testified that another person, with his assistance, had taken two photographs of the head. He identified them as accurate although some of the wounds were concealed by the hair. The photographs were introduced in evidence. The witness stated he was not experienced in taking photographs with a large camera and knew nothing about developing them. The court admonished the jury that they were permitted only for the purpose of aiding in determining the nature and location of the wounds and that the jury should not to any extent let the pictures influence or prejudice them against the defendant. Other than questioning the sufficiency of the proof of accuracy, the appellant submits that the photographs were not necessary and should have been excluded because tending to distract the jury's attention from the main issues and to arouse their prejudice. See 22 C. J. 913. It was not

necessary that the person who actually took the photographs should verify their accuracy. Central City v. Snodgrass, 234 Ky. 396, 28 S. W. (2d) 467. Perhaps the gruesome nature of the photographs of a dead body may sometimes tend to excite prejudice and may have been wholly unnecessary. But they are ordinarily admissible in evidence even without an admonition as to the effect to be given them. These photographs are not gruesome, and there was no error committed in admitting them. McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100; Pope v. Commonwealth, 247 Ky. 208, 56 S. W. (2d) 972; Waters v. Commonwealth, 276 Ky. 315, 124 S. W. (2d) 97.

The defendant had escaped from the Clark County jail and been recaptured in Nashville. He was then put in the Laurel County jail and remained there during the trial, being taken back and forth to Hyden in custody of State Highway patrolmen. There was a very large crowd in attendance and these officers were present in uniform. It was deemed well to search every person entering the courtroom and to keep the patrolmen on guard to prevent over-taxing the capacity of the room. On the defendant's motion for a jury out of Leslie County, one had been procured from Laurel County. Local attorneys, appointed by the court to defend the accused, had been excused at their request, and the court appointed Honorable D. G. Boleyn and Honorable W. O. Miller to represent him. Counsel in their brief elaborate upon the situation as thus described in the record, and maintain that the "flaming passion" existing in Perry county, from which the crowd had come, and all of the circumstances, created an unfriendly atmosphere and prevented a fair trial. It does not seem to us that this is one of those unusual cases where a prejudicial atmosphere has been created, resulting in a harmful effect upon the rights of the accused. Much more extreme conditions have been held not to have caused such. Dewberry v. Commonwealth, 241 Ky. 726, 44 S. W. (2d) 1076; Young v. Commonwealth, 245 Ky. 570, 53 S. W. (2d) 963.

The point is made by appellant that the indictment was not signed by the foreman of the grand jury as a "true bill". A copy of the indictment shows it was not so endorsed as is required by Section 119, Criminal Code of Practice. The provision is mandatory and an indictment not signed by the foreman of the grand

jury in conformity therewith is fatally defective. Cochran v. Commonwealth, 210 Ky. 332, 275 S. W. 810; Dunn v. Commonwealth, 257 Ky. 702, 79 S. W. (2d) 12. A failure to demur or move to set aside an indictment on this ground waives the defendant's right to rely upon the deficiency or defect. Patterson v. Commonwealth, 86 Ky. 313, 5 S. W. 765, 9 Ky. Law Rep. 481. In this case the defendant did demur to the indictment, but the court did not pass upon it. The record does not show that there was any suggestion or request that he should do so. We are of opinion, therefore, that the appellant waived his right to raise the question upon the appeal. Hawks v. Commonwealth, 197 Ky. 196, 246 S. W. 116; Moore v. Commonwealth, 266 Ky. 514, 99 S. W. (2d) 715; Klenekole Mining Company v. Lusk, 245 Ky. 73, 53 S. W. (2d) 168.

The right of a fair trial which our federal and state constitutions require shall be accorded every person accused of crime, however depraved he may seem to be, was given this man. The attorneys for the prosecution dealt fairly with him and counsel, serving without compensation, have diligently and ably represented him and presented his cause. The judge carefully preserved his every right and gave admonitions and instructions to the jury more favorable to the defendant than the law required. The man deliberately and cruelly took the life of a friend for no other purpose than to get possession of his property in order that he might commit another heinous crime. The rule of society, administered in accordance with established law, adjudges that he shall forfeit his life for the murder, and it is our duty to affirm the judgment of the trial court entered upon the verdict of an impartial jury of twelve of his fellow citizens.

Judgment is affirmed.

Whole court sitting.