**COFFEY v. COMMONWEALTH.**

Court of Appeals of Kentucky.
March 20, 1953.

H. K. Spear, J. S. Sandusky, Somerset, for appellant.

J. D. Buckman, Jr., Atty. Gen., Jo M. Ferguson, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Charlie Coffey was convicted of the wilful murder of Herbert Stogsdill and sentenced to life imprisonment. He appeals from the judgment entered, insisting upon a reversal for the following reasons: (1) That the court erred in admitting in evidence a photograph of the deceased; (2) that the testimony of appellant's wife was given under compulsion; (3) that the court should have instructed that appellant abandoned the difficulty; and (4) that the Commonwealth persisted in asking prejudicial questions after the court had ruled them not to be competent.

The evidence disclosed that appellant and his wife, Stella Coffey, had been having marital trouble, and that appellant had uttered a vicious threat against his wife and their four children on the evening be-fore the commission of the crime. As a result, the next morning, which was September 16, 1952, as soon as appellant had left to work on a nearby farm, his wife went to the house of a neighbor, Herbert Stogsdill, a man sixty years of age, and requested him to move her and her children to the home of her parents, which was a distance of about eight miles from the Coffey residence. Stogsdill agreed to do this, and an hour later he picked up appellant's wife and children with some of their belongings in his truck.

In leaving the neighborhood the truck was observed by appellant as it passed along a road within sight of the field where he was working. He recognized what was happening and he left his work and started in pursuit of the truck in his car. In the glove compartment of his automobile he had previously placed a pistol. He followed the truck and arrived at the home of his wife's parents shortly after Stogsdill and Stella Coffey and her children had gotten there. In traveling up a lane to reach the residence of his wife's parents, he met his mother-in-law on foot and, after taking her into his car to give her a lift, he remarked to her about "learning Stogsdill to interfere." Appellant parked his car across the front of Stogsdill's truck, which in the meantime had been turned around, alighted to the ground and walked up to Stogsdill, who was standing peaceably beside his truck. Appellant immediately slapped Stogsdill in the face and the latter struck back but the intended blow did not make contact.

Appellant then returned to his car, secured the pistol from the glove compartment, and retraced his steps to Stogsdill. He fired once into the ground as he drew near Stogsdill, and, after this, he and the older man clinched. A struggle ensued and both persons gradually moved toward a fence some feet away. At a point near a corner of the fence, the struggle continuing, appellant shot Stogsdill three times, once in the head, once in the neck, and once in the chest. The wounded man staggered to the back of his truck, slowly sank to the ground, and died with his left arm clasping the rear bumper of his ma-

chine. Appellant immediately drove away without giving any aid.

The first ground urged by appellant for reversal results from the admission of a picture as evidence which shows the body of deceased in the position in which he died. It is argued that the photograph, which the coroner testified he made of the body soon after the killing, served no evidentiary purpose but was highly prejudicial as tending to inflame the minds of the jurors.

■ There is no justifiable reason set forth in the record for introducing the photograph as evidence; nevertheless, we are convinced the picture could not have had the effect, as claimed, of arousing passion or prejudice on the part of the jury against the accused. There is nothing gruesome or shocking about the picture. From the way the body lies no wounds are visible. Nor do any blood stains appear on deceased's clothes or on the ground beside the corpse. We are afforded merely a view of a deceased person hanging over the rear bumper of his truck. We have many times held, and we so hold here, that it is not reversible error to admit as evidence pictures such as the type introduced in this case, even though the pictures may serve no useful purpose. See Davis v. Commonwealth, 279 Ky. 127, 129 S.W.2d 1030, and the many cases cited therein.

■■ Appellant advances somewhat indirectly the argument that his wife's testimony was given under compulsion and was therefore incompetent. There is no evidence in the record to indicate that pressure was in any manner exerted on the wife to compel her to appear as a witness against her husband. On the contrary, she voluntarily came into court and testified freely and at great length. Actually, appellant's contention, if we interpret it correctly, apparently amounts to the claim that, regardless of her wishes, he could on his own motion deny his wife the right to testify against him. We cannot accept this view. It is true that neither the husband nor the wife can be compelled to testify for or against the other, but the refusal so to do is the prerogative of the witness. Hall v. Commonwealth, 309 Ky. 74, 215 S.W.2d 840. In this instance, the wife chose to testify against appellant and for this reason he cannot be heard to say that she was an incompetent witness.

Appellant complains of "Instruction No. 4" which was a self-defense instruction with a qualification covering responsibility for bringing on the difficulty. He maintains the instruction as given did not submit to the jury all the law applicable to the evidence developed in the case. He thinks himself to have been entitled, in addition, to an "abandonment of difficulty" instruction, relying upon his own testimony on this point.

■ Appellant testified that after he slapped Stogsdill the latter drew a knife on him, saying, "I'll cut your guts out," and then started walking toward him in a menacing manner. He said this prompted him to procure his pistol and he insists he shot Stogsdill in self-defense because the latter kept advancing on him flourishing the knife and threatening to kill him. A knife was, in fact, found at the site of the tragedy but the proof is rather clear that it did not belong to Stogsdill. However, aside from all this, appellant out of his own mouth revealed that his acts were cold-bloodedly inexcusable. On cross-examination he was asked this question bearing on his opportunity to retire from the affray after he had commenced it: "If you had wanted to have left there wasn't a thing to have prevented you?" His answer was: "No." We think the court properly took the view, in refusing to give the instruction tendered by appellant, that he was the aggressor throughout

■ The last assignment of error scarcely merits our consideration. Appellant complains of three specific questions asked by the Commonwealth, each directed on cross-examination to a different witness. An objection to each question was interposed by appellant which was sustained by the court. The Commonwealth promptly refrained from interrogating any other witness in a similar vein. While it is undoubtedly true, as appellant maintains, that the persistent asking of incom-

petent and prejudicial questions by the Commonwealth's attorney will constitute grounds for reversal, the record does not show that any such misconduct occurred in this case. Appellant is plainly laboring under a misapprehension as to what really happened on this score.

Wherefore, the judgment is affirmed.